No. 22-20107

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

RAMEY & SCHWALLER, L.L.P.

Plaintiff—Appellant

v.

ZIONS BANCORPORATION NA, doing business as Amegy Bank

Defendant—Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION
4:20-CV-02890

**APPELLANT'S BRIEF**

Randall C. Owens
Raffi Melkonian
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, Texas 77056
(713) 572-4321
(713) 572-4320 (Fax)

**COUNSEL                FOR
PLAINTIFF—APPELLANT**

# CERTIFICATE OF INTERESTED PERSONS

No. 22-20107

RAMEY & SCHWALLER, L.L.P.

Plaintiff—Appellant

v.

ZIONS BANCORPORATION NA, doing business as Amegy Bank

Defendant—Appellee

Counsel of Record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| PLAINTIFF—APPELLANT | COUNSEL |
|---|---|
| **RAMEY & SCHWALLER, L.L.P.** | Randall C. Owens<br>Raffi Melkonian<br>WRIGHT, CLOSE & BARGER LLP<br>One Riverway Drive, Suite 2200<br>Houston, TX 77056<br>713-572-4321 |

| DEFENDANT—APPELLEE | COUNSEL |
|---|---|
| **ZIONS BANCORPORATION NA, DOING BUSINESS AS AMEGY BANK** | Kendall Valenti Speer<br>Carlton D. Wilde Jr.<br>CRADY JEWETT MCCULLEY & HOUREN LLP<br>Suite 1700<br>2727 Allen Parkway<br>Houston, TX 77029 |

/s/ *Raffi Melkonian*
Raffi Melkonian

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is warranted because this case presents an issue of first impression in this circuit: whether a Texas criminal complaint in support of an arrest warrant disqualifies a borrower under the Small Business Administration's loan programs (including the Paycheck Protection Program enacted during COVID-19). That issue is potentially important to many litigants. Argument would be helpful to the Court in particular because the case involves the intersection between Texas criminal law and federal regulatory interpretation. Those questions are best discussed during oral argument. FIFTH CIR. R. 28.2.3; 34.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................ii

STATEMENT REGARDING ORAL ARGUMENT ...............................iv

TABLE OF CONTENTS ..................................................................... v

TABLE OF AUTHORITIES.................................................................vii

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF THE ISSUES...............................................................2

INTRODUCTION.....................................................................................4

STATEMENT OF THE CASE .................................................................7

    A.    Facts. ...........................................................................7

        1.    Regulatory background. ............................................7

        2.    Factual background. ................................................10

    B.    Procedural background. ....................................................14

SUMMARY OF THE ARGUMENT ......................................................16

ARGUMENT ........................................................................................18

    I.    A grant of summary judgment is reviewed de novo. ............18

    II.    The district court erred in dismissing Ramey's claims. .......18

        A.    There are three different kinds of criminal complaints under Texas law....................................... 19

        B.    The complaint filed against William Ramey is not an "Information."........................................................ 22

        C.    The Criminal Complaint also does not qualify as an "other means" by which formal criminal charges can be brought. ............................................. 29

CONCLUSION ........................................................................... 33

CERTIFICATE OF SERVICE ................................................. 35

CERTIFICATE OF COMPLIANCE ....................................... 36

# TABLE OF AUTHORITIES

Page(s)

## Federal Cases

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................... 18

*Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin.*,
   458 F. Supp. 3d 1044, No. 20-C-0601, 2020 WL 2088637 (E.D. Wis.
   May 1, 2020) ......................................................................... 8

*Collins v. Mnuchin*,
   896 F.3d 640 (5th Cir. 2018) ................................................. 23

*Dillon v. Rogers*,
   596 F.3d 260 (5th Cir. 2010) ................................................. 18

*Global Cross Telecommunications, Inc. v. Metrophones
   Telecommunications, Inc.*,
   550 U.S. 45 (2007) ................................................................. 30

*Pierce v. Dep't of the Air Force*,
   512 F.3d 184 (5th Cir. 2007) ................................................. 18

*Roberto v. Dep't of Navy*,
   440 F.3d 1341 (Fed. Cir. 2006) ............................................. 23

*Sanderson Farms, Inc. v. OSHA*,
   964 F.3d 418 (5th Cir. 2020) ................................................. 23

*Springfield Hospital, Inc. v. Guzman*,
   28 F. 4th 403 (2d Cir. 2022) ................................................... 7

*Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of
   Keffeler*,
   537 U.S. 371 (2003) ............................................................... 31

## State Cases

*Baskins v. State,*
　171 S.W. 723 (Tex. Crim. App. 1914) ................................................. 28

*Ex Parte Clear,*
　573 S.W.2d 224 ..................................................................................... 29

*Ex Parte Ulloa,*
　514 S.W.3d 756 (Tex. Crim. App. 2017) ............................................. 27

*Holland v. State,*
　623 S.W.2d 651 (Tex. Crim. App. 1981) ............................................. 26

*In re Elliott,*
　504 S.W.3d 455 ..................................................................................... 31

*Le v. State,*
　963 S.W.2d 838 (Tex. App.—Corpus Christi 1998, pet. ref'd ............. 20

*Leal v. State,*
　533 S.W.3d 444 (Tex. App.—San Antonio, 2016, no pdr) ................... 20

*Rios v. State,*
　718 S.W.2d 730 (Tex. Court of Criminal Appeals, 1986) .............. 24, 25

*Ross v. St. Luke's Episcopal Hosp.,*
　462 S.W.3d 496 (Tex. 2015) ................................................................. 31

*State v. Drummond,*
　501 S.W.3d 78 (Tex. Crim. App. 2016) ................................... 19, 25, 27

## Federal Statutes

15 U.S.C. § 631(a) ........................................................................................ 7

15 U.S.C. § 635(b)(6) .................................................................................... 7

15 U.S.C. § 636(a) ........................................................................................ 7

15 U.S.C. § 636(a)(36) .................................................................................. 7

15 U.S.C. § 9005 ........................................................................................... 8

28 U.S.C. § 1332 ................................................................................ 1

Pub. L. No. 116-136, 134 Stat. 281 (2020) .................................... 7

**State Statutes**

Tex. Civ. Prac. & Rem. Code § 27.001(6) .................................... 31

Tex. Code of Crim. P. Art. 15.17 ................................................ 21

Tex. Code of Crim. P. Article 26.01 ...................................... 21, 22

Texas Code of Crim. P. 15.04 ...................................................... 20

**Federal Regulations**

Business Loan Program Temporary Changes; Paycheck Protection
   Program,
   85 FR 20811-01 ("April IFR") ...................................... 8, 22

Business Loan Program Temporary Changes; Paycheck Protection
   Program—Additional Eligibility Revisions to First Interim Final
   Rule,
   85 FR 38301-01 ........................................................................ 9

# JURISDICTIONAL STATEMENT

This is a diversity case. *See* 28 U.S.C. § 1332. In its briefing notice, this Court asked the parties to brief "whether complete diversity exists amongst the parties to this appeal." The question arises because R&S is a limited liability partnership—as the Court observed, an LLP's citizenship turns on the citizenship of each of its partners. Amegy's notice of removal did not specifically allege the citizenship of each R&S partner. ROA.17.

In response to the Court's question, complete diversity does exist. The 100% owner and Managing Partner of R&S is William P. Ramey. ROA.85. Mr. Ramey is a citizen of Texas. ROA.276 (listing Texas residence). R&S has no other partners. ROA.487 (listing ownership percentage of Mr. Ramey as "100%"). Amegy is not a Texas citizen.

1

# STATEMENT OF THE ISSUES

1. During the COVID-19 crisis, Congress enacted a broad fully-forgivable loan program, the Paycheck Protection Program, to make sure that businesses could keep their workers employed. A Houston law firm, Ramey & Schwaller LLP, sought a PPP loan. R&S represented in its PPP loan materials that William P. Ramey, R&S's sole partner, was not "subject to" an indictment, arraignment, information, or any other "means by which formal criminal charges are brought in any jurisdiction." *See, e.g.*, ROA.280 (Borrower application form). That disclosure was required because the SBA disqualifies loan candidates who fall into those categories or with owners who fall into those categories. When R&S made that statement, Ramey had been issued a criminal complaint to support an arrest warrant under Article 15 of the Texas Code of Criminal Procedure. The PPP loan materials could have, but did not, ask about arrests or criminal complaints.

The question presented is whether an Article 15 criminal complaint is either a criminal "information" or "or "another means by which formal criminal charges are brought in any jurisdiction" for purposes of the SBA regulations, as the district court held, or whether

criminal complaints are a distinct procedural mechanism antecedent to an indictment, information, arraignment, or other means by which formal criminal charges are brought.

## INTRODUCTION

This case is about a Payroll Protection Program loan issued by the Small Business Administration through Amegy bank during the COVID-19 emergency. The PPP program was intended to be extraordinarily broad and capacious to meet the crushing emergency of the pandemic. Loans were fully guaranteed, and the borrower's credit-worthiness was not relevant. Yet the SBA carved out a narrow exception to eligibility. Companies whose owners were "presently subject to" an "indictment, *criminal information*, arraignment, or other means by which *formal criminal charges are brought in any jurisdiction*" were disqualified.

That provision is at the core of this dispute. At the time Houston law firm Ramey & Schwaller LLP (called R&S in this brief) applied for a loan, its sole owner, William P. Ramey, had been issued a Texas criminal complaint. Because the disqualifications above do not cover a mere criminal complaint, R&S answered "no" to questions about whether Ramey was subject to formal criminal charges on the loan application materials. Upon discovering the criminal complaint, Amegy

accelerated R&S's loan because, in its view, R&S's answer about Ramey was false.

This precipitous action caused tremendous damage to the firm in the middle of the fraught macroeconomic situation caused by COVID-19. R&S was relying on the loan to meet its payroll. Employees' livelihoods were put at risk in the near term, and R&S's existence as a firm jeopardized. All of this was exactly the opposite of what Congress intended PPP to achieve. Yet the district court agreed that Amegy's actions were correct. In the court's view, the criminal complaint was either the same thing as an "information," or, perhaps, fell into the catch-all provision for all "other" ways formal criminal charges are brought in Texas.

Neither conclusion is right. A criminal complaint issued in aid of an arrest warrant (like the one here) is not a charging instrument for a felony under Texas law. But all the words used in the regulation are charging instruments, as the catch-all provision makes clear. If the SBA intended to disqualify individuals subject to arrest or arrest warrants from PPP loans, it would have said so. Thus, the criminal complaint here was not an information because an information is a charging

instrument for a felony under Texas law. And a criminal complaint is likewise not an "other means" by which to "formally charge" Ramey in Texas. It is at the opposite end of the spectrum in criminal law.

The district court below expressed its view that the SBA regulations require "complete candor." That is not so. While complete candor divorced of the regulatory text may be ideal in some sense, it is not what the SBA demands. Instead, the SBA requires the applicant to truthfully answer the questions posed. R&S did so. The judgment below allowing Amegy to freeze R&S assets and throw a thriving business into disorder in the middle of the pandemic was error. It should be reversed.

## STATEMENT OF THE CASE

A.  **Facts**.

1.  **Regulatory background.**

*The SBA had authority to issue small business loans before COVID.* The Small Business Administration was enacted in 1958 to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns." Pub. L. No. 85-536, 72 Stat. 384 (1958) (codified as amended at 15 U.S.C. § 631(a)). The SBA's primary mechanism for aiding small businesses is by financing so-called "Section 7(a)" under the Small Business Act. *See* 15 U.S.C. § 636(a). The SBA guarantees these loans, but they are issued by private lenders. *See Springfield Hospital, Inc. v. Guzman*, 28 F. 4th 403, 409 (2d Cir. 2022). The Small Business Act authorizes the SBA administrator to "make such rules and regulations" he deems necessary to implement the loan program. *See* 15 U.S.C. § 635(b)(6).

*Congress dramatically expands the SBA's powers during COVID.* In response to the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020). Title I of the CARES Act created the PPP. *See* 15 U.S.C. § 636(a)(36). The PPP is not a

7

standalone program. Rather, it is a "new loan program to be administered by the SBA under Section 7(a) of the Small Business Act." *Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1050, No. 20-C-0601, 2020 WL 2088637, at *2 (E.D. Wis. May 1, 2020). Like normal Section 7(a) loans, the "loans are made by the SBA's participating banks and guaranteed by the SBA itself." *Id*. Section 1106 of the CARES Act provides that the PPP loans will be forgiven, and the SBA will pay the lender the amount forgiven, if the borrower uses the funds for certain purposes, including for payroll expenses. 15 U.S.C. § 9005.

*The SBA issues certain disqualifications for PPP borrowers who are subject to formal criminal charges.* The CARES Act and the implementing regulations disqualify some potential recipients from receiving PPP loans. As relevant here, the SBA issued regulations stating that "[y]ou are ineligible for a PPP loan if ... an owner of 20 percent or more of the equity of the applicant is incarcerated, on probation, on parole; presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction; or has been convicted of a

8

felony within the last five years." Business Loan Program Temporary Changes; Paycheck Protection Program, 85 FR 20811-01 ("April IFR") (emphasis added). In its June 26, 2020 Interim Final Rule, or IFR, the SBA also explained that the purpose of this prohibition was to prohibit individuals "charged" with felonies—which puts them "at risk of imprisonment"—from receiving loans. Business Loan Program Temporary Changes; Paycheck Protection Program—Additional Eligibility Revisions to First Interim Final Rule, 85 FR 38301-01. Neither the April IFR nor the June IFR discuss arrests or criminal complaints as bars to borrowing.

To provide guidance to borrowers such as R&S and lenders such as Amegy, the SBA issued Paycheck Protection Program Loans Frequently Asked Questions for implementing PPP loans. ROA.875. The PPP FAQs specifically provide that "borrowers … may rely on the guidance provided in this document" as the SBA's interpretation of the CARES Act and the relevant Interim Final Rules. ROA.875. The FAQ also specify precisely the businesses that are not eligible for a PPP loan and identified them in 13 CFR 120.110 and described further in SBA's

SOP 50 10, Subpart B, Chapter 2.1  In other words, there is a list of ineligible borrowers that does not require interpretation. ROA.878. In addition, PPP ineligible businesses are enumerated as follows in 13 CFR 120.110 to include "Businesses with an Associate who is incarcerated, on probation, on parole, or has been indicated for a felony or a crime of moral turpitude."

### 2.    Factual background.

The PPP allowed a loan for R&S with the principal amount of $249,300. Amegy facilitated the loan. R&S and Amegy, through Vice President Scott Goforth, R&S's private banker, executed closing documents Amegy disbursed the PPP Loan funds. Before funding the SBA's PPP Loan, Amegy, though Goforth, required the execution of several Amegy-created documents, including a Business Loan Agreement and Promissory Note. *See, e.g.*, ROA. 844 (Business Loan Agreement); ROA.854 (Promissory Note). As relevant here, these tried to track the SBA disqualification rules. ROA.845 (requiring that Borrower be an "eligible recipient" of the loan under the SBA rules). R&S also executed a borrower application form to the SBA stating that

Ramey was not subject to an information or other means by which formal criminal charges are brought in Texas. ROA.491.

After all of the funds from R&S's PPP Loan were used as allowed by the SBA and the CARES Act, and after R&S began submitting the loan forgiveness documentation, Amegy (through Goforth) froze R&S's bank accounts, including R&S's IOLTA account, without prior warning, on the eve of payroll and with several debits in process. *See, e.g.*, ROA.815 (Ramey letter). Amegy, through Goforth, sent a letter to R&S on July 27, 2020, suggesting that he had "become aware of information that suggests [Question 5] was not answered accurately." ROA.801; ROA.811. This was the sole basis provided for Amegy holding R&S's PPP Loan in default. ROA.811-818 (correspondence between R&S and Amegy). Amegy refused to change its mind even though R&S provided ample evidence that its belief was wrong. *See, e.g.*, ROA.813 (July 29, 2020 letter to Scott GoForth); ROA.815 (July 29, 2020 letter to Jami Meador). Later correspondence confirms that this was the only basis for withdrawal of the loan. ROA.838 (correspondence from SBA).

Rather than address whether R&S's loan application was in fact correct, Amegy wrongly accelerated the entire value of R&S's PPP Loan

requiring that it be paid in full "on or before August 26, 2020." ROA.802 (Ramey Declaration); ROA.462 (Goforth affidavit). The Loan served the original SBA/PPP purpose, allowing R&S to maintain full employment through the COVID-19 pandemic-related shut-down, but after Amegy's wrongful offset, R&S needed to seek high interest loans and loans from its principals to maintain full employment, exactly in contravention to the intent and policy of the CARES Act. ROA.802; ROA.828 (Rules and Regulations of Small Business Administration about Paycheck Protection Program).

Amegy's improper declaration of default under the PPP Loan has also interfered with R&S's ability to obtain additional loans under the CARES Act. Most recently, R&S was denied second draw PPP funds by Chase. Upon inquiry by Ramey, Chase advised that R&S's PPP Loan through Amegy was flagged as an issue and was preventing an application for a second draw PPP loan. Had Amegy not declared R&S's loan in default, R&S would be entitled to another loan of nearly $250,000, which would again be forgivable when properly expended in accordance with the SBA's rules. ROA.803. Upon information and

belief, Amegy indicated to the SBA while this lawsuit was pending that R&S was not entitled to its PPP Loan.

*Ramey's defamation claims against the complainant survives.* The criminal case also spawned a civil litigation, filed after R&S applied for the loan. ROA.803. In that case, the complainant sought civil damages against Mr. Ramey. Ramey counterclaimed for defamation. While that case should not be directly relevant here, in 2021 the state district judge denied the plaintiff's anti-SLAPP motion to dismiss Ramey's counterclaims because Ramey produced a prima facie case that Williams' allegations are false. ROA.803, ¶14; ROA.836 (denial of motion to dismiss).

*The criminal information is no-billed.* In fall of 2021, a grand jury convened in Harris County, Texas, returned a no bill, finding there was no probable cause that Ramey committed the charge of attempted sexual assault. ROA.1257 (the grand jury has "failed to find a bill of indictment"). Ramey was never indicted, arraigned, or made subject to a criminal information.

**B.    Procedural background.**

R&S sued in Texas state court, seeking damages for breach of fiduciary duty, breach of contract, conversion, money had and received, and quasi-estoppel. ROA.21-29 (state court petition). Amegy removed the case to federal court based on diversity jurisdiction. ROA.16-19 (notice of removal). The parties then engaged in discovery, and each moved for summary judgment. ROA.1-15 (district court docket).

The district court granted Amegy summary judgment, concluding that R&S falsely answered the question on the Amegy loan agreement intended to track the SBA's disqualification rules: that is, whether Ramey was "subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction." ROA.1265. It held that Ramey was subject to an "information" under Texas law, and therefore did not answer the disqualification question on the Amegy loan form truthfully. ROA.1265. In this opinion, the district court did not address whether Ramey was subject to "any other means by which formal criminal charges are brought in any jurisdiction." ROA.1268. The district judge entered final judgment dismissing "this case." ROA.1269.

14

R&S moved for reconsideration. ROA.1272. Because of Judge Gilmore's retirement, that motion was assigned to a new district judge, the Honorable Kenneth Hoyt. Judge Hoyt apparently implicitly rejected the "information" theory, and instead stated that Ramey was subject to an "other means by which formal criminal charges are brought." ROA.1355. In Judge Hoyt's view, the regulatory was a "catch-all" phrase to ensure "complete candor" from the applicant for the loan. ROA.1355. Thus, Amegy was justified in accelerating R&S's loan.

# SUMMARY OF THE ARGUMENT

The district court granted judgment against R&S on two bases. One: the court held that the criminal complaint against Ramey was equivalent to a criminal information under Texas law. Thus, R&S's loan materials were false. That is wrong. Texas courts are clear that a criminal complaint in support of arrest is *not* a charging instrument. A criminal information *is*. No Texas court has ever held that a criminal complaint issued under Article 15 of the Texas Code of Criminal Procedure, like this one, is or can be an information that can charge a felony.

Two, the district court held, in the alternative (and only on reconsideration), that the criminal complaint was a "means by which formal criminal charges are brought in any jurisdiction...." and thus still disqualified R&S. For the same reasons, this is wrong. An Article 15 criminal complaint is a document prerequisite to an arrest warrant. The SBA knows how to ask about pending arrests, because it does so in different documents. But, given the COVID-19 emergency and the keen importance of providing pay to workers around the country, it declined

to disqualify people subject to an arrest for PPP loans. That difference decides this case. Because the only basis for the judgment was the district court's incorrect conclusion that R&S had untruthfully answered questions about Ramey disqualification for a PPP loan, the judgment below should be reversed and the case remanded for further proceedings.

# ARGUMENT

## I.     A grant of summary judgment is reviewed de novo.

Summary judgment is proper if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe all facts and inferences in the light most favorable to the non-moving party. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). This Court reviews a grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Pierce v. Dep't of the Air Force*, 512 F.3d 184, 186 (5th Cir. 2007).

The parties appear to agree that Texas criminal law should govern whether the criminal complaint falls within the SBA's disqualifications. Analogizing to the procedure for deciding *Erie* questions in this Court, R&S cites the Texas Court of Criminal Appeals when available and to Texas intermediate courts where it is not.

## II.     The district court erred in dismissing Ramey's claims.

The district court offered two theories for why R&S inaccurately answered Question No. 5 and was thus disqualified from the SBA loan.

18

First, it held that the criminal complaint filed against Ramey was *equivalent to* a criminal information, and was thus a charging instrument. Later, the district court held that a criminal complaint is an "other" kind of *formal charge* that is captured by the SBA's disqualification regulations. Both arguments are incorrect. At the core, the problem with both conclusions is that they misunderstand the status of a criminal complaint used to secure an arrest warrant under Texas criminal law. Such complaints are not charging instruments and they cannot be used as the basis for charging a felony. They are merely the prelude to an arrest. But had the SBA wanted disclosures of all arrests, the regulatory text would have said so. It does not—and thus Ramey's answers to the Amegy loan documents were correct.

## A.    There are three different kinds of criminal complaints under Texas law.

Under Texas criminal law, the word "complaint" is used in "three different contexts." *State v. Drummond*, 501 S.W.3d 78 (Tex. Crim. App. 2016): (a) as a prerequisite to a criminal information; (b) to obtain an arrest warrant or issue a summons; or (c) as the sole charging instrument in municipal and justice courts. *Id.* (i.e., not for felonies). These clear distinctions are reproduced in the Texas Code of Criminal

Procedure. The Code situates complaints to secure arrest warrants in Article 15 of the Code—that is the section for "Arrest under Warrant." *See* TEXAS CODE OF CRIM. P. 15.04 ("Complaint"). The kind of complaint that is used to buttress an information is set forth in Article 21, not Article 15. Art. 21.20 ("an information is a written statement filed and presented on behalf of the State by the district or county attorney, charging the defendant with an offense which may be law be so prosecuted"); Art. 21.22 ("No information shall be presented until affidavit has been made by some credible person charging the defendant with an offense," in section titled "Information Based Upon Complaint"). Similarly, an indictment is discussed in Article 21, not Article 15. *See, e.g., Art.* 21.01 (defining "indictment"). Thus, while a complaint may "accompany[]" a criminal information, "it is not a charging instrument in of itself, but is merely a component of the instrument [i.e., of the information]." *Le v. State*, 963 S.W.2d 838, 842 (Tex. App.—Corpus Christi 1998, pet. ref'd). *See Leal v. State*, 533 S.W.3d 444, 445 (Tex. App.—San Antonio, 2016, no pdr) ("A valid complaint is a prerequisite to a valid information"). There is no such thing as an Article 15 criminal

complaint that can subject a person to a felony prosecution. That can only be an information or an indictment.

The criminal complaint filed against Ramey in this case was the *second* kind of criminal complaint—an Article 15 complaint in service of securing an arrest warrant. As the record shows, the Complaint was used as the basis for an arrest warrant issued against Ramey in September 2019. ROA.467. Ramey then attended an Article 15.17 hearing—which again tracks a complaint in support of an arrest, *not* an information or indictment or arraignment. *See* TEX. CODE OF CRIM. P. Art. 15.17 (describing duties of arresting magistrate, including ensuring that *Miranda* rights tracks).

Moreover, Ramey was never indicted, and no criminal information was filed. And he was not arraigned, because an indictment is a prerequisite to an arraignment under Texas law. *See* TEX. CODE OF CRIM. P. ARTICLE 26.01. Every indication in the record is that the Criminal Complaint was issued under Article 15 in support of an arrest warrant (and thus under the *Drummond* court's second category).

## B. The complaint filed against William Ramey is not an "Information."

The sole issue the district court decided in its summary judgment opinion was whether R&S answered Question 5 on the PPP Loan falsely. That is, whether "an owner of 20 percent or more of the equity of the applicant is incarcerated, on probation, on parole; presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction...." *See* Business Loan Program Temporary Changes; Paycheck protection Program-Requirements-Loan Forgiveness, 85 Fed.Reg. 20812, Could I be ineligible....? (to be codified at 13 CFR Part 120). The Court's Order did not find that Ramey was subject to indictment, arraignment, or other means by which formal criminal charges are brought. In fact, as explained above, Ramey was not subject to indictment or a criminal information. And, again, Ramey was "not subject to an arraignment," as an indictment is a prerequisite an arraignment for a felony charge in Texas. *See* TEX. CODE CRIM. PROC. ART. 26.01 ("In all felony cases, after indictment, and all misdemeanor cases punishable by imprisonment, there shall be an arraignment.").

Instead, the Court held directly that the criminal complaint filed against Ramey was the equivalent of a criminal information. In the Court's words, "[t]he Court is satisfied that the Complaint against William Ramey produced in this case meets the requirements of an information." ROA.1266. That conclusion is wrong both textually and as a matter of interpreting Texas criminal law.

The regulatory text weighs strongly against the district court's interpretation. "When construing a regulation or statute, it is appropriate first to examine the regulatory language itself to determine its plain meaning." *Roberto v. Dep't of Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006). But the SBA disqualification language does not say or even imply that a document that somehow "meets" the requirements of a criminal information disqualifies the applicant—the only disqualification is for a borrower that is "subject to" an actual "information." 85 FR 20811-01. Had the SBA meant to include all equivalents to an information, it could have said so directly—for example, the regulatory text could have barred applicants that are "subject to an information or any instrument equivalent to an information under state law." It does not do so. Applying an "editorial"

"blue pencil," *Collins v. Mnuchin*, 896 F.3d 640, 676 (5th Cir. 2018) to the regulation also renders the last clause of the exclusion—"another means by which formal criminal charges are brought in any jurisdiction" surplusage by expanding the scope of the enumerated items when there is already a catch-all provision. *See Sanderson Farms, Inc. v. OSHA*, 964 F.3d 418, 425 (5th Cir. 2020) ("[i]nterpretations of statutes and regulations that avoid surplusage are preferred"). That is another clue that the interpretation the district court adopted was incorrect.

In any event, as explained in Part A, a criminal complaint and a criminal information are fundamentally different mechanisms of criminal procedure in the context of a felony. An Article 15 complaint to secure a warrant is not an information, and it has nothing to do with an information. *Rios v. State*, 718 S.W.2d 730 (Tex. Crim. App. 1986) is instructive. There, a man was "charged" with a felony by criminal complaint. *Id.* at 731. He was later indicted. He claimed that his speedy trial act right accrued upon filing of the complaint in support of arrest because by statute, the act is triggered when "an indictment, information, or complaint … is filed in court." *Id.* at 732. The en banc

Court of Criminal Appeals disagreed. As it explained, when dealing with a complaint for a *felony* (which cannot be charged by criminal complaint), the speedy trial act requires a "charging instrument upon which an accused may be tried in the court in which it is filed, rather than one upon which a warrant of arrest may be issued by a magistrate." *Id*. That is because, as the court explained, criminal complaints have "two discrete functions." *Id*. at 732. One is to "supply a basis for a magistrate to issue warrant for arrest." *Id*. The other, in non-felony cases, is to "serve as a charging instrument for trial in municipal court." *Id*. That holding has direct relevance here. To be sure, Ramey was subject to a criminal complaint. But it was *not* the kind of criminal complaint "upon which an accused may be tried in the court…." *Id*. To the contrary, like the complaint in *Rios*, it was a complaint in support of an arrest warrant. That is not what the SBA disqualification addresses.

The district court's reliance on *State v. Drummond,* 501 S.W.3d 78, 81-82 (Tex. Crim. App. 2016) to hold that the criminal complaint here was functionally equivalent to an information was also fatally flawed—even if this Court is not persuaded that the phrase "information" should be cabined to its formal meaning. That is because

25

the district court overread *Drummond*. The question there *solely* concerned the kind of "complaint" that is used "as a prerequisite to an information." *Id.* at 81. The court of criminal appeals specifically carved that out from what it called a second "context' for the word "complaint" in the Texas Code of Criminal Procedure—a complaint to secure an arrest. *Id.* at 82. The court further explained that greater specificity and detail is needed when discussing the first kind of complaint, the kind that support an information. And even that kind of complaint can be more cursory than the information: "particularity as a requisite in an information is *not necessary* in the complaint on which it is founded." *Holland v. State*, 623 S.W.2d 651, 652 (Tex. Crim. App. 1981). The court also held that in the context of a complaint prerequisite to an information *only*, that complaint can sometimes also act as the information. *Drummond*, 81 S.W.3d at 81-82.

But again, none of that has anything to do with the kind of criminal complaint in support of an arrest warrant to which Ramey was subject. Indeed, the document the Court declared to be an information is based 100% on hearsay testimony of the investigating detective where he provided what he was told by the complainant with no other

26

evidence. And it is unrefuted that this is the document used by the State to support the arrest of William Ramey. The arrest warrant provides it hinges on the Complaint that the district court wrongly declared an information:

> COMPLAINT HAS BEEN MADE UNDER OATH THAT ALLEGES THAT IN HARRIS COUNTY, TEXAS, THE ABOVE NAMED PERSON, HEREINAFTER STYLED THE DEFENDANT, DID ON OR ABOUT  COMMIT THE OFFENSE OF ATT SEXUAL ASSAULT.
>
> THEREFORE YOU ARE COMMANDED TO ARREST THE DEFENDANT AND BRING HIM BEFORE THE COURT NAMED ABOVE TO ANSWER THE ABOVE CHARGE.  RETURN THIS WRIT AND INDICATE BELOW HOW IT WAS EXECUTED. BAIL IS SET AS INDICATED ABOVE

ROA.627. Thus, as there is no waiver of indictment, this complaint cannot be the charging instrument for the felony alleged. *See, e.g.*, *Drummond*, 501 S.W.3d at 82.

Nor does the district court's citation to *Ex Parte Ulloa*, 514 S.W.3d 756 (Tex. Crim. App. 2017) for the proposition that a "criminal information" gives a court jurisdiction over a felony case help. That case stands only for the proposition that an *information* (again, not a complaint) tolls the running of limitations in a felony case. The court of criminal appeals specifically declined to consider whether "a complaint would be sufficient to toll limitations in cases other than Class C misdemeanors." *Id.* at 760. The dispositive issue is whether Ramey was

subject to a formal felony charge. He was not. The complaint could never serve as an information as there was no waiver of indictment.

In litigating the summary judgment motion, Amegy produced an expert report on Texas criminal law to support its claims. ROA.1167 (Report of Amanda Peters). The district court did not rely on that report in either of its opinions. If this Court does review that report, however, it does not help Amegy. Indeed, Professor Peters accepts that criminal complaints under Article 15 are different things than criminal complaints in aid of an information. *See, e.g.*, ROA.1173. And Professor Peters accepts that the normal way a case is charged is that a complaint is made, and only then is an information prepared or an indictment sought under Texas law. ROA.1174 (trying to explain away this distinction by reference to the COVID-19 backlog). Instead, Professor Peters concludes that R&S was disqualified by changing the frame of the question: by asking whether "criminal proceedings have begun." *See e.g.*, ROA.1179 (focusing on whether adversarial proceedings have begun). This frame is a red herring. The SBA regulations do not ask whether a "criminal case has begun" or whether the right to counsel has attached (as Professor Peters also insists). To the contrary, the SBA

used specific words to convey its meaning (indictment, arraignment, information). None of them apply here. And it is telling that Professor Peters can cite no case holding that an Article 15 complaint is an information or a formal charge *Baskins v. State*, 171 S.W. 723 (Tex. Crim. App. 1914), on which the report places considerable emphasis, is a case about when the "prosecution" of the crime of seduction begins. *Id.* at 724. Even assuming this antiquated case could still be relevant today, it has nothing to say about whether a criminal complaint under Article 15 is an information. It is no surprise that the last time *Baskins* has been cited for any proposition by the Court of Criminal Appeals is 1978, and even then only for its irrelevant holding about when the jurisdiction of the arresting court lapses. *See Ex Parte Clear*, 573 S.W.2d 224 n. 9 (Tex. Crim. App. 1978). The Peters report cannot support the district court's conclusions.

### C. The Criminal Complaint also does not qualify as an "other means" by which formal criminal charges can be brought.

Judge Gilmore based her opinion *solely* on her finding that the criminal complaint was effectively an "information" under the SBA regulations. Because that is wrong, the judgment should be vacated. On

29

reconsideration, Judge Hoyt appeared to change course. He held that the criminal complaint against Ramey was one of the "other means" by which formal criminal charges can be brought. Thus, R&S was excluded from borrowing for that reason. If this Court reaches that argument, that holding too is error.

"Other means" by which "formal criminal charges can be brought" is not defined anywhere in the regulation. There are several strong indications, however, that it is not a capacious provision designed to ensure "complete candor" that Judge Hoyt seems to have believed. First, the regulatory history of the provision shows that the "other means" language was not intended to expand the scope of the exclusion to non-indictments, but to make sure that outlier states who call those documents something else were captured. *See Global Cross Telecommunications, Inc. v. Metrophones Telecommunications, Inc.*, 550 U.S. 45, 48 (2007) (holding that regulatory history can illuminate meaning of clauses). For example, a pre-PPP form for SBA loans, based on the same statutory and regulatory framework as the PPP, says the reference to an "information" in the criminal exclusion is meant to be "a document that is filed in court identifying charges against a defendant"

that is "commonly used in lieu of an indictment if the subject is intending to plead guilty." *See* SBA Information Notice, Revised Form 912, June 19, 2013, available at https://www.sba.gov/sites/default/files/lender_notices/2000-833.pdf ("Revised Form 912"). This matches the argument above that the complaint cannot properly be construed as functionally the same as an information because it could not possibly lead to a formal criminal charge.

Second, application of well-established tools of textual interpretation leads to the same result. At its base, the phrase "other means" must be construed according to the canon of *ejusdem generis*, "where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar to those enumerated by the [preceding] specific words." *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 373 (2003). Thus, other means by which formal criminal charges are brought would have to be like an indictment and as Ramey is not

"under an indictment," Ramey is not "under other means." Texas state law applies the same canon of construction, producing the same result.[2]

Just as important, the SBA knows how to ask about criminal complaints or arrests when it wants. For example, some SBA forms include a specific question asking for *arrests* within six months of the loan application, and distinguish that question from the disqualification. *Compare* Question 17 (disqualification) with Question 18 (arrested) on Revised Form 912, available at https://www.sba.gov/sites/default/files/2022-06/Form%201919_10-21-2020-rev%20508%20r2_0.pdf. That is the kind of question that might require a "yes" answer for a criminal complaint followed by an arrest. The SBA did not ask that question precisely because it was focused on *expanding* eligibility for people subject to criminal penalties, as it has formally done at least once. *See, e.g.,* 85 FR 38301 (amending disqualification rules to enact create a shorter lookback disqualification

---

[2] "When ... more specific items ..., are followed by a catch-all "other," [g], the doctrine of *ejusdem generis* teaches that the latter must be limited to things like the former. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015); *In re Elliott*, 504 S.W.3d 455, 475 (Tex. App.—Austin 2016, original proceeding) (Pemberton, J., concurring) (applying ejusdem generis canon to definition of "legal action" in TEX. CIV. PRAC. & REM. CODE § 27.001(6)). That canon provides that when "general words follow an enumeration of two or more things, they apply only to . . . things of the same general kind or class specifically mentioned." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 199 (2012).

period for "felonies that do not involve fraud, bribery, [and other financial crimes]"). Because the SBA had every tool needed to find out about arrests, but chose not to in the interest of equity, the regulatory text should not be stretched to expand its coverage beyond its plain meaning. As explained above, a Texas criminal complaint in aid of an arrest is not a formal charge of any kind. That makes it not the equivalent of an information, and not any other kind of formal charge. The district court's decisions otherwise are error.

## CONCLUSION

The judgment below should be reversed.

Respectfully submitted,

*/s/ Raffi Melkonian*
Raffi Melkonian
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, Texas  77056
(713) 572-4321
(713) 572-4320 (Fax)
melkonian@wrightclosebarger.com

**COUNSEL     FOR     PLAINTIFF—APPELLANT**

# CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2022, I electronically transmitted the attached Brief of Appellant to the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit using the Court's ECF System, which sent a Notice of Electronic Filing to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means.  I further certify that I have sent a copy of this document via United States First Class Mail, postage prepaid, to the attorneys of record.


*/s/ Raffi Melkonian*
Raffi Melkonian

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,647 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in Century Schoolbook (Scalable) 14pt for text and Century Schoolbook (Scalable) 12pt for footnotes.

*/s/ Raffi Melkonian*
Raffi Melkonian